### THEODORE PAPPAS
*vs.*
### CHARLES STACEY AND WILLIAM WINSLOW

Cumberland.   May 31, 1955.

*Bernstein & Bernstein,*
*James Connellan,* for plaintiff.

*Berman, Berman and Wernick,* for defendants.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, JJ. TAPLEY, J., did not sit.

WILLIAMSON, J. This is an appeal in equity from a permanent injunction against picketing for organizational purposes. The case was heard on bill, answer, replication, and an agreed statement of facts. The defendants are officials of Local 390, Hotel and Restaurant Employees and Bartenders International Union, which for convenience may be referred to as "Local 390."

The agreed statement of facts is here set forth in full:

"1. (That) the said Plaintiff is the operator and owner of a certain restaurant or eating establishment known as and called Theodore's Lobster House, located at 123 Commercial Street in said Portland.

"2. (That) the said Defendants and their agents and servants have been and are conducting picketing at the place of business of your Plaintiff.

"3. The said picketing has been at all times peaceful picketing.

"4. At least three employees of the Plaintiff are on strike, two of whom have been participating in the picketing and the third of whom has been present at the site of the picketing. All three are members of the union, Local #390 of the Hotel and Restaurant Employees and Bartenders International Union.

"5. The defendants and the three employees aforesaid who are on strike have been conducting the picketing for the sole purpose of seeking to organize other employees of the Plaintiff, ultimately to have the Plaintiff enter into collective bargaining and negotiations with the Union, this being done as a preliminary for attempting to organize restaurant employees in other establishments throughout the State of Maine.

"6. The Plaintiff employs on an average thirty persons who would properly be subject to organization and of this thirty at least five are sporadic or transient employees.

"7. The business of the Plaintiff is a lawful business and if the picketing is illegal, the Plaintiff has been suffering and will continue to suffer damage in the conduct of his business which is irreparable and for which there is no adequate remedy at law."

There are, in our view, two issues: (1) Does the law of Maine prohibit peaceful picketing for organizational purposes under the circumstances of this case? (2) If so, is such picketing protected under the "free speech" provision of the Federal Constitution?

In ascertaining the law, or broadly speaking the public policy, which governs in this situation, we must consider the case of *Keith Theatre* v. *Vachon, et al.*, 134 Me. 392, 187 A. 692 (1936), and the statute first enacted in P. L., 1941, c. 292, now R. S., c. 30, § 15 (1954), reading:

"Workers shall have full freedom of association, self organization and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from interference, restraint or coercion by their employers or other persons. . ."

The parties are in accord that *Keith Theatre* v. *Vachon, et al., supra,* is the only decision of our court touching the issues. No question arises whether jurisdiction of the case lies in the federal or state courts.

We are free to find the facts in this appeal without reference to the findings of the single justice. The firmly established principle "that his decision, as to matters of fact, should not be reversed, unless it clearly appears that such decision is erroneous" found in *Young* v. *Witham*, 75 Me.

536 (1884), is not here applicable. "The claim has no merit in a case which involves no oral testimony." *Mellen, Jr., et al., Tr.* v. *Mellen, Jr., et al.,* 148 Me. 153, 90 A. (2nd) 818 (1952).

There are certain facts stated in or inferred from the agreed statement to be discussed before turning to the precise issues.

(1)  The picketing is peaceful and effective. In a sense the picket line is a wall erected between the plaintiff's restaurant and the public. We may fairly infer that the public, or those who supply the needs of plaintiff's business, or more likely persons in both categories, refuse to cross the picket line or scale the wall.

At the moment we are not considering the objective of the picketing. If the purpose were to secure higher wages, or shorter hours, the immediate damage from the picketing would be like in kind and perhaps in degree to that suffered by the plaintiff.

(2)  The plaintiff has not interfered with organizational activities by Local 390 or the striking employees among the other employees, apart from seeking injunctive relief against picketing. There is no suggestion that the plaintiff has objected to or interfered with the persuasion of the employees to join Local 390, except in this action.

(3)  The objective of the strike of three union employees is not specifically stated. The picketing, however, has been conducted by the defendants and by the striking employees "for the sole purpose of seeking to organize other employees of the Plaintiff. . . ." It is apparent, therefore, that the strike of the three employees and the picketing are being conducted for the same objective.

(4)  There are no grievances existing between the plaintiff and the employees, including the three on strike, relat-

ing to wages, hours, and conditions of employment. The defendants alleged such grievances in their answer. There is, however, a total lack of such claims in the agreed statement. On the record the grievance (if it may be called such) of the defendants is not with the plaintiff, but with the employees for not joining Local 390.

We are here concerned, as we have seen, with picketing solely for organizational purposes. Whether the labor-management relationship in the plaintiff's restaurant "ultimately," to quote from the agreed statement, shall take the form of a closed, union, preferential union, or nonunion shop, or any other type, is not the point at issue. Our question remains whether the defendants may press for their immediate purpose "of seeking to organize other employees" by peaceful picketing at the plaintiff's place of business.

(5) The fact that the picketing is part of a plan for the organization of restaurant employees throughout the State, is not of weight in the case. If the picketing is lawful for organizational purposes at the plaintiff's restaurant, it does not become unlawful from the stated broader purpose. It is enough that we here consider picketing for organizational purposes among the twenty-seven nonunion employees of the plaintiff.

We are of the opinion that the strike by the three union employees for organizational purposes is an unlawful strike. It follows that picketing in support of such strike, although peaceful, is likewise unlawful and may be enjoined.

In *Keith Theatre* v. *Vachon, supra,* at p. 397, a strike has been defined to be "a combined effort among workmen to compel the master to the concession of a certain demand, by preventing the conduct of his business until compliance with the demand." In Restatement, Torts, § 797, comment *a* (1939) we find: *"Definition of strike.* A strike is a concerted refusal by employees to do any work for their em-

ployer, or to work at their customary rate of speed, until the object of the strike is attained, that is, until the employer grants the concession demanded."

The purpose of the strike, we repeat, is "for the sole purpose of seeking to organize other employees of the Plaintiff. . . ." A strike for organizational purposes is by definition a strike to obtain from the employer a concession which he may grant. "A strike necessarily assumes the existence of a grievance. To right the asserted wrong is its purpose." *Keith Theatre, supra* at p. 398. In this instance the purpose of the strike necessarily is to compel the employer to bring pressure upon the employees to join Local 390. For what other purpose under the circumstances of this case are the employees on strike?

Under the statute enacted in P. L., 1941, c. 292, *supra*, the employee, or worker, is protected from "interference, restraint or coercion by their employers or other persons. . . ." The worker must be left free from interference by employer or other persons in reaching a decision whether to join or refrain from joining a union. It follows necessarily that pressure cannot lawfully be directed against the employer to force him to interfere with the free choice of his employees. The plaintiff cannot lawfully be placed in a position where compliance with the strikers' demands requires action in violation of the law of the State.

This is, however, precisely what the strikers here seek to accomplish. In brief, the strike for organizational purposes is unlawful for it is by its very nature destructive of the protection for the employees provided by the statute of 1941, *supra*.

We do not base our decision, however, solely upon the fact of an unlawful strike. Treating the case as if only picketing were involved, we reach the same result.

In our view peaceful picketing for organizational purposes is unlawful under our law, and may be enjoined. For the moment we approach the problem, having in mind the "labor-relations" principle in distinction from the "picketing-free speech" principle. Although there is no dispute between the plaintiff and his employees, yet the employer, on the defendants' theory, may be subjected to irreparable loss from action directed in terms to the persuasion of nonunion employees to join a union.

A coercive force is generated by the picketing to secure new members for the union. It is apparent that this force is applied to the employer to urge his employees to join the union to save his business, and to the employees to join to save their livelihood.

In reaching for the employees, there is a steady and exacting pressure upon the employer to interfere with the free choice of the employees in the matter of organization. To say that the picketing is not designed to bring about such action is to forget an obvious purpose of picketing—to cause economic loss to the business during noncompliance by the employees with the request of the union.

We turn again to the statute, *supra,* protecting the worker in his unquestioned right to organize and bargain collectively free from "interference, restraint or coercion by their employers or other persons. . . ." We have discussed the problem with particular reference to the strike and the employer. The employer may neither interfere nor be compelled to interfere with his employees in matters of organization. He cannot lawfully stop *his loss* from picketing by denying full freedom of association to his employees. Freedom to associate of necessity means as well freedom not to associate.

The same restraints are applicable to "other persons." They are likewise forbidden to interfere. We see no reason

why labor union officials, as here, are not included within the definition of "other persons." Granted the organization sought by the defendants (and by the strikers) may be in the best interests of the employee, it yet remains his privilege to accept or reject the proposal. He may for example have no desire for union affiliation, or he may have a preference for a union other than that represented by the defendants. In either case, the choice rests with the employee. The freedom of the employee thus remains a reality.

The employee cannot escape a share of the irreparable damage admittedly caused to the business on which his livelihood depends. Irreparable damage to employer must in any appreciable period be like damage to the employee. The defendants say in substance to the twenty-seven nonunion workers "join with us or we will continue to harm the business in which you are employed."

The picketing is at least an act of interference with the employee in the exercise of his personal rights. It violates the language and the purpose of the statute, *supra*, and it is unlawful.

The defendants urge that the *Keith Theatre* case, *supra*, does not control the decision and that the 1941 statute, *supra*, has no force as the expressed public policy of the State. In the *Keith Theatre* case, *supra*, the court enjoined stranger picketing, in which no employee took part. A principal purpose of the picketing was to compel the Theatre "to adopt the so-called closed shop agreement. . . ." The decision was placed on the ground that stranger picketing was unlawful. The ruling by the Supreme Court of the United States to the contrary in *American Federation of Labor* v. *Swing*, 312 U. S. 321, 61 S. Ct. 568 (1941) had not then been made. Our court refused to decide whether a strike or picketing by employees to secure unionization for their own benefit would have been lawful. The court said on

page 400 with apparent approval in what may be regarded as dictum:

> "While we need not go so far in this case as to hold that the employees themselves could not picket peaceably * * * to secure unionization, yet there is much eminent authority to that effect."

and again on page 403:

> "But be it as it may (as to whether *employees themselves* can lawfully strike or picket peaceably to secure unionization), we do not think that it was lawful for *these defendants* to picket even peaceably to secure unionization by the employer of its satisfied and non-striking employees."

The defendants argue that, assuming the rule is established by the dictum, *Keith Theatre* and the instant case are distinguishable on the ground that the former involves unionization and the latter organization only.

It is unnecessary in our view of the case to discuss distinctions between the "unionization" of the *Keith Theatre* case in 1936, and the attainment of a union or closed shop or any other form of conditioning employment on union membership. The purpose of the picketing here, that is the immediate purpose, is solely to bring employees into Local 390. We are not interested in the ultimate form of the relations between the plaintiff and his employees.

There is a clear difference between the attainment of an agreement for employment conditioned in some form on union membership, and the persuasion of employees to join a union. In the former case, action is required by the employer. Only with agreement of union and the employer can the objective be reached. In the latter case, however, no connection between employer and employee necessarily exists. The union may reach and persuade the employee to join without directly touching or affecting the interests of the employer.

We direct our decision to the case of picketing solely for organizational purposes. We need not, nor do we, pass upon the lawfulness of a strike or picketing for other purposes.

The second question is whether the picketing is protected as "free speech" under the Federal Constitution. "The freedom of speech and of the press, which are secured by the First Amendment against abridgment by the United States, are among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a state." *Thornhill* v. *State of Alabama,* 310 U. S. 88, 60 S. Ct. 736, 740 (1940). The Supreme Court has developed and applied the "picketing-free speech" principle in a series of cases since the *Thornhill* case. See annotations of Supreme Court cases in 94 L. Ed. 976, 977, and cases cited in *Building Service Employees Internat'l Un.* v. *Gazzam,* 339 U. S. 532, 70 S. Ct. 784 (1950). For our purposes the governing principles sufficiently appear in the cases discussed below.

In the *Gazzam* case, *supra,* it was held that a state may without abridging the right of free speech restrain picketing for a purpose unlawful under its laws and policies, even though a statute expressing such policy has no criminal sanctions.

The purpose of the picketing in *Gazzam, supra,* was to compel the proprietor of a hotel to coerce his employees, no one of whom was a member of a union, in the choice of a bargaining representative. The union insisted the employer sign a contract requiring his employees to join the union.

The court said, at p. 787:

> "This Court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution."

> \* \* \* \* \*

> "But since picketing is more than speech and establishes a *locus in quo* that has far more po-

tential for inducing action or nonaction than the message the pickets convey, this Court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity."

\* \* \* \* \*

"The State of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes . . . Under the so-enunciated public policy of Washington, it is clear that workers shall be free to join or not to join a union, and that they shall be free from the coercion, interference, or restraint of *employers of labor* in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees' choice of a bargaining representative is an attempt to induce a transgression of this policy, and the State here restrained the advocates of such transgression from further action with like aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment.

"Petitioners insist that (American Federation of Labor v. Swing, 312 U. S. 321, 61 S. Ct. 568) is controlling. We think not. In that case this Court struck down the State's restraint of picketing based solely on the absence of an employer-employee relationship. An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees' selection of a bargaining representative."

\* \* \* \* \*

"The Washington statute has not been construed by the Washington courts in this case to prohibit picketing of workers by other workers. The construction of the statute which we are reviewing only prohibits coercion of workers by employers."

The Washington statute, quoted in *Gazzam, supra,* provides for freedom of "the individual unorganized worker . . . from interference, restraint, or coercion of employers of labor, or their agents. . . ." The language comes from the Norris-LaGuardia Act of 1932. 29 U. S. C. A. § 102. Our statute significantly reads *"employers or other persons."*

In *Local Union No. 10, Etc.* v. *Graham,* 345 U. S. 192, 73 S. Ct. 585 (1952), the court upheld an injunction against peaceful picketing when carried on for purposes in conflict with the Virginia Right to Work Statute. A substantial purpose was to prevent nonunion employees from working on the project. The court said, at p. 589:

> "The immediate results of the picketing demonstrated its potential effectiveness, unless enjoined, as a practical means of putting pressure on the general contractor to eliminate from further participation all nonunion men or all subcontractors employing nonunion men on the project."

The Massachusetts Court, through Justice Wilkins, has stated in apt language our position taken in light of the decisions of the Supreme Court in *Colonial Press* v. *Ellis,* 321 Mass. 495, 74 N. E. (2nd) 1 (1947), at p. 4:

> "The defendants rely upon certain of the more recent cases in the Supreme Court of the United States. . . We do not understand, however, that that court has held that picketing in support of an unlawful objective cannot be enjoined. . . . Until there is an unequivocal pronouncement to that effect we adhere to the view of the law laid down in our own decisions."

The 1941 statute, *supra,* is a solemn declaration of the public policy of our State. It is the law, duly enacted by the Legislature, which must govern the decision in this case. Within the plain and clear meaning and intent of the statute we find, as we have indicated, a public policy against peaceful picketing at the place of business for organizational pur-

poses. In our opinion the restraint of such picketing does not abridge the right of free speech under the decisions of the Supreme Court.

There was no error in the issuance of the injunction.

The entry will be

*Appeal dismissed.*

*Decree affirmed.*