## Richmond

E. R. Dougherty, Jr., Et Al v. Commonwealth of Virginia.

Tony Childs v. Commonwealth of Virginia.

December 2, 1957.

Record Nos. 4727, 4728.

Present, All the Justices.

The opinion states the case.

*Beecher E. Stallard,* for the plaintiffs in error.

*C. F. Hicks, Assistant Attorney General (Kenneth C. Patty, Attorney General,* on brief), for the Commonwealth.

Whittle, J., delivered the opinion of the court.

Dougherty and Childs, hereinafter called defendants, were arrested in Brunswick County on warrants charging them with unlawful picketing in violation of § 40-64, paragraph 3, Code of Virginia, 1950, as amended by Acts of Assembly 1952, chapter 674, pages 1123, 1124. Upon conviction in the Trial Justice Court the defendants appealed to the Circuit Court where the cases were submitted to the court upon an agreed stipulation of facts. Dougherty was adjudged guilty of one offense and fined $25; Childs was adjudged guilty of two separate offenses and fined $25 for each offense. To review these judgments we granted defendants writs of error.

Defendants state the issues involved as follows:

"1. Does the third paragraph of Section 40-64 of the Code of Virginia, 1950, as amended,[1] violate the right of freedom of speech, assemblage and the right to picket, peacefully, as guaranteed under the First Amendment to the Constitution of the United States, and Section 12, Article I of the Constitution of Virginia, protected against infringement by a state by the 14th Amendment to the Constitution of the United States?

"2. Are the rights of the defendant to participate in picketing or picketing activities protected under the National Labor Relations Act, as amended by Labor Management Relations (Taft-Hartley) Act, 1947?"

---

[1] "§ 40-64. PREVENTING PERSONS FROM PURSUING LAWFUL VOCATIONS, ETC.; ILLEGAL PICKETING; INJUNCTION.—

[1] "No person shall singly or in concert with others interfere or attempt to interfere with another in the exercise of his right to work or to enter upon the performance of any lawful vocation by the use of force, threats of violence or intimidation, or by the use of insulting or threatening language directed toward such person, to induce or attempt to induce him to quit his employment or refrain from seeking employment.

[2] "No person shall engage in picketing by force or violence, or picket alone or in concert with others in such manner as to obstruct or interfere with free ingress or egress to and from any premises, or obstruct or interfere with free use of public streets, sidewalks or other public ways.

[3] "When a strike or lockout is in progress, no person who is not, or immediately prior to the time of the commencement of any strike or lockout was not, a bona fide employee of the business or industry being picketed shall participate in any picketing or any picketing activity with respect to such strike or lockout.

[4] "Any person violating any of the provisions of this section shall be guilty of a misdemeanor, and punished accordingly.

[5] "Notwithstanding the punishments herein provided any court of general equity jurisdiction may enjoin picketing prohibited by this section, and in addition thereto, may enjoin any picketing or interference with lawful picketing when necessary to prevent disorder, restrain coercion, protect life or property, or promote the general welfare."

The stipulated facts are generally as follows: Brunswick Box Company, Inc. and E. E. Van Volkenburg and Company, a partnership, are concerns engaged in separate operations but both establishments are located on the same premises near the town of Lawrenceville. At the time under consideration the employees of each establishment were organized and belonged to a labor union known as Local 2518 which was the collective bargaining agent for the employees. Local 2518 was affiliated with the Eastern District Council of Carpenters of Virginia, chartered by the United Brotherhood of Carpenters and Joiners of America, International, A. F. of L.

The Local was on strike for a lawful purpose and was engaged in picketing the above establishments which were being operated at the time with non-striking employees. The picketing was peaceful, free from violence, threats or other lawlessness.

Neither of the defendants was at the time nor immediately prior to the commencement of the strike a *bona fide* employee of either establishment and neither had ever been so employed. They were employees of the Eastern District Council of Carpenters of Virginia.

Both defendants had been in Brunswick County from time to time for several months prior to the incidents involved for the purpose of assisting in the organization of the labor union, which was of recent origin and engaged in its first strike.

While the strike was in progress it was the practice of the defendants to participate daily in the picketing activities. Dougherty was charged with one offense and Childs was charged with two; Childs carried a sign in the picket line on one occasion; on the other occasions the defendants marched in the picket line but did not carry signs.

The basic issue presented in the first question posed by defendants is whether or not the First Amendment to the Constitution of the United States and Section 12, Article I of the Constitution of Virginia bars the Commonwealth from prohibiting anyone who is not, or was not immediately prior to the strike or lockout an employee of a business concern, from picketing said business while there is a strike or lockout.

The defendants contend that they have a right to picket under the right of freedom of speech and assemblage guaranteed by the First Amendment to the Constitution of the United States and Section 12, Article I, of the Constitution of Virginia, the same being protected against infringement by the Fourteenth Amendment to the Constitu-

tion of the United States, and that paragraph 3 of § 40-64 contravenes this right.

The Commonwealth on the other hand contends that paragraph 3 of § 40-64 is a valid exercise of the police power of the State.

In 1950 we had under consideration in *Edwards* v. *Commonwealth*, 191 Va. 272, 60 S. E. 2d 916, the third paragraph of § 40-64 as originally enacted, and declared the same to be unconstitutional as applied to picketing where no strike was in progress because, as written, it was too broad in its possible applications. At that time this paragraph read:

"It shall be unlawful for any person who is not, or immediately prior to the commencement of any strike was not, a bona fide employee of the business or industry being picketed, to participate in any picketing or any picketing activity with respect to such strike or such business or industry."

The defendants in the *Edwards* case were arrested for picketing a colored theatre while no strike was in progress. There they were seeking to compel the theatre to employ a Negro manager. The defendants were not employees of the theatre nor were they employed in the moving picture industry. There we held the statute as drawn to be too broad. The opinion in that case stated: (191 Va., at p. 276)

"We could, of course, add to or rearrange the words of the statute and make its third section apply only when there is a strike; but our function is to interpret the Act as written, not to rewrite it. *Va. Ass'n of Ins. Agents* v. *Commonwealth*, 187 Va. 574, 578, 47 S. E. 2d 401, 404; *Lewis* v. *Commonwealth*, 184 Va. 69, 73, 34 S. E. 2d 389, 390."

Following the decision in the *Edwards* case, the next regular session of the General Assembly amended the statute to make it applicable only when a strike or lockout is in progress. The General Assembly evidently interpreted the language quoted above as implying that if the third paragraph of § 40-64 applied only while a strike was in progress then it would be a constitutional exercise of the police power of the State. The language, in fact, related to the meaning rather than to the constitutionality of the section.

Defendants in their brief and in argument before us cite and rely upon the long series of cases in which the Supreme Court has been called upon to consider the limits imposed by the Fourteenth Amendment on the power of States to enjoin picketing. The cases decided

by the Supreme Court prior to September, 1950, beginning with *Thornhill* v. *Alabama*, 310 U. S. 88, 60 S. Ct. 736, 84 L. ed. 1093 (1940), were thoroughly analyzed by our court in the *Edwards* case and need not be restated here. These cases and others decided since September, 1950, have been painstakingly analyzed by Mr. Justice Frankfurter in the recent case (October Term, 1956) of *International Brotherhood of Teamsters, Local 695, A.F.L., et al.* v. *Vogt, Inc.*, 354 U. S. 284, 77 S. Ct. 1166, 1 L. ed. 2d 1347.

The facts in the *Vogt* case were as follows: Vogt, Inc. owned and operated a gravel pit in Wisconsin where it employed fifteen or twenty men. The union sought unsuccessfully to induce some of the employees to join the union and commenced picketing the entrance to the business with signs reading "The men on this job are not 100% affiliated with the A.F.L.". In consequence, drivers of several trucking companies refused to haul material to and from the plant, causing damage to the respondent (Vogt, Inc.). Respondent sought an injunction to restrain the picketing.

While the trial court did not make the finding requested by respondent that the picketing was engaged in for the purpose of "coercing, intimidating and inducing the employer to force, compel or induce" its employees to join the union, the court nevertheless held that by virtue of a Wisconsin statute (§ 103.535) prohibiting picketing in the absence of a "labor dispute", the petitioners must be enjoined from maintaining any pickets near respondent's establishment, from displaying near the premises signs indicating that there was a labor dispute between management and its employees or between respondent and any of the petitioners, and from inducing others to decline to transport goods to and from respondent's place of business.

On appeal the Wisconsin Supreme Court at first reversed, relying on *AFL* v. *Swing*, 312 U. S. 321, 61 S. Ct. 568, 85 L. ed. 855, to hold § 103.535 unconstitutional, on the ground that picketing could not constitutionally be enjoined mainly because of the absence of a "labor dispute". (270 Wis. 315, 71 N. W. 2d 359)

Upon reargument, the court withdrew its original opinion and made the requested finding referred to above. The court canvassed the facts surrounding the picketing and observed that "One would be credulous, indeed, to believe under the circumstances that the union had no thought of coercing the employer to interfere with its employees in their right to join or refuse to join the defendant union." Therefore the court held the picketing was for "an unlawful pur-

pose", since a Wisconsin statute (§ 111.06(2)(b)) made it an unfair labor practice for an employee individually or in concert with others to "coerce, intimidate or induce any employer to interfere with any of his employees in the enjoyment of their legal rights * * * or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative." Here the court relied on *Building Service Employees* v. *Gazzam*, 339 U. S. 532, 70 S. Ct. 784, 94 L. ed. 1045, and *Pappas* v. *Stacey*, 151 Me. 36, 116 A. 2d 497, and affirmed the granting of the injunction on this ground. 270 Wis. 321a, 74 N. W. 2d 749. Upon appeal, the Supreme Court, in a five-to-three decision, affirmed. 354 U. S. 284, *supra*.

In discussing the case of *Thornhill* v. *Alabama*, *supra*, the majority opinion in the *Vogt* case says: "As the statute dealt at large with all picketing, so the court broadly assimilated peaceful picketing in general to freedom of speech, and as such protected against abridgement by the Fourteenth Amendment."

The holdings in the *Thornhill* case were applied by the Supreme Court in the case of *AFL* v. *Swing*, *supra*, to hold unconstitutional an injunction against peaceful picketing based on a state's common law policy against picketing when there was no immediate dispute between employer and employee.

The opinion of the Supreme Court in the *Vogt* case continues:

"Soon, however, the court came to realize that the broad pronouncements, but not the specific holding, of *Thornhill* had to yield 'to the impact of facts unforeseen', or at least not sufficiently appreciated. *Cf. People* v. *Schweinler Press*, 214 N. Y. 395, 108 N. E. 639; 28 Harv. L. Rev. 790. Cases reached the court in which a state had designed a remedy to meet a specific situation or to accomplish a particular social policy. These cases made manifest that picketing, even though 'peaceful' involved more than just communication of ideas and could not be immune from all state regulation. 'Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769, 776 (concurring opinion); see *Carpenters Union* v. *Ritter's Cafe*, 315 U. S. 722, 725-728.

\*     \*     \*     \*     \*     \*     \*

"The implied reassessments of the broad language of the *Thornhill*

case were finally generalized in a series of cases sustaining injunctions against peaceful picketing, even when arising in the course of a labor controversy, when such picketing was counter to valid state policy in a domain open to state regulation. The decisive reconsideration came in *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490. A union seeking to organize peddlers, picketed a wholesale dealer to induce it to refrain from selling to nonunion peddlers. The state courts, finding that such an agreement would constitute a conspiracy in restraint of trade in violation of the state antitrust laws, enjoined the picketing. This court affirmed unanimously.

" 'It is contended that the injunction against picketing adjacent to Empire's place of business is an unconstitutional abridgement of free speech because the picketers were attempting peacefully to publicize truthful facts about a labor dispute * * *. But the record here does not permit this publicizing to be treated in isolation. For according to the pleadings, the evidence, the findings, and the argument of the appellants, the sole immediate object of the publicizing adjacent to the premises of Empire, as well as the other activities of the appellants and their allies, was to compel Empire to agree to stop selling ice to nonunion peddlers. Thus all of appellants' activities * * * constituted a single and integrated course of conduct, which was in violation of Missouri's valid law. In this situation, the injunction did no more than enjoin an offense against Missouri law, a felony.' *Id.*, at 497-498.

"The court therefore concluded that it was 'clear that appellants were doing more than exercising a right of free speech or press * * *. They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade.' *Id.*, at 503.

*   *   *·   *   *   *   *

"This series of cases, then, established a broad field in which a state, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy."

Applying the clear ruling in the *Vogt* case to the cases before us, we find no constitutional inhibition to a state enacting a law prohibiting strangers from entering the picket line when a strike or

lockout is in progress. When we consider paragraph 3, here involved, in context with the other provisions of § 40-64, the prohibition contained therein has a tendency to place a reasonable limitation on the number of persons engaged in picketing and is thus a peace and order measure. If the defendants in the instant cases be allowed to freely join the picket line then other strangers to the controversy would have the same right and numbers could thus be added with sufficient strength to turn peaceful picketing into picketing by force with its accompanying coercion and power. The limitation placed upon picketing to those directly involved in the issue causing it, has a direct relation to the prevention of disorder and coercion.

As we said in the *Edwards* case, *supra*, (191 Va., at p. 285), the State may regulate picketing if such regulation has "a reasonable basis in prevention of disorder, restraint of coercion, protection of life or property, or promotion of the general welfare."

Another plausible purpose of the act, beyond the preservation of peace and order, is to express a policy of the State that when a situation gets to the point of a strike or lockout, both the employer and the employees should be left free to resolve their differences without pressure from outside influences.

It cannot be doubted that paragraph 3 of § 40-64, as amended, embraces an avowed public policy of the State. The General Assembly was unwilling to abandon such policy after our decision in the *Edwards* case and immediately reenacted the statute in an attempt to correct its defects. Here the State, through its legislature, clearly "designed a remedy to meet a specific situation or to accomplish a particular social policy", and, as stated in the majority opinions in the *Vogt* case, "These cases [those decided by the Supreme Court] made manifest that picketing, even though 'peaceful', involved more than just communication of ideas and could not be immune from all State regulation. 'Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' "

We are therefore of the opinion that the paragraph in question (par. 3, § 40-64) is not violative of either the State or Federal Constitution.

The remaining question posed by defendants is "Are the rights of the defendant to participate in picketing or picketing activi-

ties protected under the National Labor Relations Act, as amended by Labor Management Relations (Taft-Hartley) Act, 1947?"

A reading of the pertinent provisions of the Taft-Hartley Act, as amended, (29 U. S. C. A., §§ 152, 157, 163)[2] discloses that it is concerned with and limited to the relations between employers and employees. The defendants in the instant cases were not and never had been employees of the establishments here involved. Therefore the provisions of the Act giving and protecting the rights of employees to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," among which are striking and picketing, does not extend to the defendants.

There is no provision in the National Labor Relations Act which attempts to include within the jurisdiction of the National Labor Relations Board the policing of picketing so as to maintain peace and order and prevent violence. This is a matter within the jurisdiction of State and local authorities.

The statute in question was enacted as a measure to prevent violence while a strike or lockout is in progress. It in no way interferes with the peaceful picketing of the employees concerned in the strike. See *Allen-Bradley Local* v. *Wisconsin Employment Relations Board*, 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154, and cases therein cited.

For the reasons stated the judgment of the trial court is

*Affirmed.*

---

[2] "(3). The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, * * *." (29 U. S. C. A. § 152(3)).

"Right of employees as to organization, collective bargaining, etc.

"Employees shall have the right to self-organization, to form, join, assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. July 5, 1935, c. 372, § 7, 49 Stat. 452; June 23, 1947, 3:17 p.m., E.D.T., c. 120, Title I, § 101, 61 Stat. 130." (29 U.S.C.A. § 157).

"Right to strike preserved.

"Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right. July 5, 1935, c. 372, § 13, 49 Stat. 457; June 23, 1947, 3:17 p.m. E.D.T., c. 120, Title I, § 101, 61 Stat. 151." (29 U.S.C.A., § 163).