SHANNON, Judge.
This is an interlocutory appeal from a decree of the Circuit Court for Broward County, Florida, granting a temporary in *31 junction to the appellees and against the appellants. The appellees, as plaintiffs below, filed their sworn complaint alleging that Creighton’s Restaurant has been operated, equipped and furnished as one of the most superb, magnificent, elegant and excellent restaurants in the whole country, catering to a select clientele of critical and fastidious tastes; that its restaurant and its auxiliary gift shop have been treated and considered as one of the show places of south Florida; that the corporation has not directly or indirectly engaged in interstate commerce; that it is and has been exclusively a local business enterprise soliciting and catering to patrons in Broward County, Florida, and not elsewhere; that its employees were specially trained to carry on the business and that the said employees had not been organized by any labor union and had not had any labor disputes of whatever kind with the plaintiff. Also they alleged that at all times the said employees have been free to join any labor union they desired and have been free to organize their own labor union if they so desired, and that neither the restaurant nor its officers or agents had exercised any coercion, persuasion or direction relating to the labor organization. They further alleged that on February 9, 1959, at about six o’clock P.M. the plaintiff restaurant discharged a waitress for the reason that she was not fulfilling her duties and rendering to patrons the kind of service required; that at eight o’clock P.M. February 9, at the height of the dinner hour, approximately forty employees of the restaurant, without notice to the plaintiffs, quit their work, leaving the patrons unserved. It further alleged that the said employees who had walked off their jobs were requested to return to their work and finish serving the patrons, but the employees refused to return to work. Thereupon Creighton’s Restaurant advised said employees that it regarded their failure to return to work as their termination of their employment. They further alleged that the next morning, February 10, 1959, the president of the plaintiff corporations had a telephone conversation with the defendant Paul P. McCastland, and was informed by him that the action of said employees was without justification; and that by Tuesday night, February 10, 1959, the plaintiff had been able to organize the staff of employees so that it could operate its business as usual. The complaint charged the defendants with intercepting motor vehicles carrying the employees of Creighton’s Restaurant to their work, and by intimidation and coercion seeking to persuade them to quit their employment with plaintiffs; with organizing a picket line in front of Creighton’s Restaurant, and with the use of threats, intimidation and coercion seeking to dissuade customers from patronizing Creighton’s Restaurant; with using the private property of the plaintiffs for their picket line, and intercepting trucks transporting food supplies to Creighton’s Restaurant; and by the use of coercion, threats and intimidation seeking to dissuade the drivers of said trucks from delivering to the restaurant the necessary supplies for operation. The complaint goes on to state that said walkout or strike by the employees was not authorized by a majority vote of the employees but was done at the direction of the defendants without the existence of any labor dispute between the restaurant and its employees; that the defendants, their agents, representatives, servants and employees had deliberately and intentionally interfered with the progress and operation of the restaurant through the height of the winter season for the sole and express purpose of coercing and intimidating the employees of the said restaurant to join the defendants’ union against the will of said employees; that such actions were being done in a manner so as to communicate to the patrons and the present employees of the restaurant a threat of force and violence; and that by so doing they were preventing ingress and egress by patrons and employees to and from the *32 restaurant. The complaint, as far as we are here concerned, ended with a prayer for a temporary restraining order.
The chancellor on the 13th day of February, 1959, entered a temporary restraining order after considering the sworn complaint, the record of proceedings, the evidence submitted, and argument of counsel. The order restrained and enjoined the defendants :
“(a) From persuading or inducing the employees of Creighton’s Restaurant to strike or walk out, or otherwise quit in concert their work at Creighton’s Restaurant.
“(b) From picketing Creighton’s Restaurant, owned and operated by Creighton’s Restaurant Corporation.
“(c) From entering upon any portion of Tract A, shown on the plat of Sunrise, recorded in Plat Book 28, page 42, of the public records of Bro-ward County, Florida.
“(d) From interfering with the right of ingress and egress to and from Creighton’s Restaurant by its patrons, employees and delivery vehicles of service agencies.
“(e) From interfering in any way with the operation of Creighton’s Restuarant by Creighton’s Restaurant Corporation.”
The appellants have predicated their appeal upon two questions of law; namely, (1) whether the Circuit Court has jurisdiction to enjoin picketing by defendant union when no violence is involved, and (2) whether the temporary injunction is viola-tive of the rights of the defendant union and its agents as being indefinite, uncertain and broader than necessary under the existing law of Florida.
The defendants, under the first point, cite the case of Hotel Employees Union, Local No. 255 v. Sax Enterprises, Inc., 358 U.S. 270, 79 S.Ct. 273, 3 L.Ed.2d 289, decided January 12, 1959, wherein the Supreme Court reversed the Supreme Court of Florida in twelve consolidated cases. In the language of the court:
“The judgments of the Supreme Court of Florida in these twelve consolidated cases must be reversed. They all concern the power of the courts of Florida to enjoin organizational picketing at twelve Florida resort hotels. After a series of decisions in regard to these and related cases, the Florida Supreme Court, in identical per curiam opinions, affirmed the issuance of permanent injunctions against the picketing.
“The Florida courts were without jurisdiction to enjoin this organizational picketing, whether it was activity protected by § 7 of the National Labor Relations Act, as amended, 29 U.S.C.A. § 157, * * * ”
The Sax Enterprise case, supra, as we see it, is no authority for the question presented. In that case there were two phases upon which the United States Supreme Court bottomed its decision; namely, (1) the Florida Court was without jurisdiction, since these cases involved interstate commerce, and (2) there was no showing of violence. This can be readily seen from the following quotation:
“ * * * In none of the twelve cases did the Florida trial courts make any finding of violence, and in some an affirmative finding of no violence was made.
“Since it was stipulated below that a witness would testify that interstate commerce was involved in the Florida resort hotel industry, and since the parties asked that ‘final decree be entered by the Chancellor upon the record as now made in the light of this stipulation,’ we find it unnecessary to remand for consideration of that question. * *
*33 Plaintiffs have cited many decisions, among which is Pappas v. Stacey, 151 Me. 36, 116 A.2d 497, appeal dismissed 350 U. S. 870, 76 S.Ct. 117, 100 L.Ed. 770, which involved a restaurant, as we have in the instant case. In a later appeal from the Wisconsin Court, International Brotherhood of Teamsters, Local 695, A. F. L. v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1171, 1 L.Ed.2d 1347, affirmed 270 Wis. 315, 321, 71 N.W.2d 359, 74 N.W.2d 749, the Supreme Court had this to say about the Stacey case, supra:
“In the light of this background, the Maine Supreme Judicial Court in 1955 decided, on an agreed statement of facts, the case of Pappas v. Stacey, 151 Me. 36, 42, 116 A.2d 497, 500. From the statement, it appeared that three union employees went on strike and picketed a restaurant peacefully ‘for the sole purpose of seeking to organize other employees of the Plaintiff, ultimately to have the Plaintiff enter into collective bargaining and negotiations with the Union * * * ’ Maine had a statute providing that workers should have full liberty of self-organization, free from restraint by employers or other persons. * * The Maine Supreme Judicial Court drew the inference from the agreed statement of facts that ‘there is a steady and exacting pressure upon the employer to interfere with the free choice of the employees in the matter of organization. To say that the picketing is not designed to bring about such action is to forget an obvious purpose of the picketing — to cause economic loss to the business during noncompliance by the employees with the requests of the union.’ [151 Me. at page 42, 116 A.2d at page 500.] It therefore enjoined the picketing, and an appeal was taken to this Court.
“The whole series of cases discussed above allowing, as they did, wide discretion to a State in the formulation of domestic policy, and not involving a curtailment of free speech in its obvious and accepted scope, led this Court, without the need of further argument, to grant appellee’s motion to dismiss the appeal in that it no longer presented a substantial federal question. 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770.
“The Stacey case is this case. As in Stacey, the present case was tried without oral testimony. As in Stacey, the highest state court drew the inference from the facts that the picketing was to coerce the employer to put pressure on his employees to join the union, in violation of the declared policy of the State. (For a declaration of similar congressional policy, see § 8 of the National Labor Relations Act, 61 Stat. 140, 29 U.S.C. § 158, 29 U.S.C.A. § 158). The cases discussed above all hold that, consistent with the Fourteenth Amendment, a State may enjoin such conduct.
“Of course, the mere fact that there is ‘picketing’ does not automatically justify its restraint without an investigation into its conduct and purposes. State courts, no more than state legislatures, can enact blanket prohibitions against picketing. Thornhill v. State of Alabama, [310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093], and American Federation of Labor v. Swing, [312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855], The series of cases following Thornhill and Swing demonstrate that the policy of Wisconsin enforced by the prohibition of this picketing is a valid one. * * * »
From the sworn bill of complaint and the evidence introduced, it appears that plaintiff below was not engaged in interstate commerce as was the plaintiff in the case of Jersey County Motor Co. v. Local Union No. 525, etc., 1959, 21 Ill.App.2d 38, 156 *34 N.E.2d 633. In addition to the authorities we have already cited, the case of Lavery’s Main Street Grill, Inc. v. Hotel & Rest. Emp., etc., 1959, 146 Conn. 93, 147 A.2d 902, 907, wherein many of the leading labor cases are cited, states:
“In accordance with the alternative claim of the defendants, we may assume, without in any way deciding, that the picketing here was an unfair labor pratice under' the Labor Management Relations Act, 1947. 61 Stat. 140, 141, 29 U.S.C. § 158(a) (1), (3), (b) (2) [29 U.S.C.A. § 158(a) (1, 3), (b) (2)]. In cases of this type, it becomes necessary for a state court to determine whether the business so affects interstate commerce as to preclude state action. Devine Bros., Inc. v. International Brotherhood, 145 Conn. 77, 82, 139 A.2d 60. This is a question of fact which may be relatively simple or relatively difficult, and of course is always subject to review in the United States Supreme Court. Here the question is factually clear. In International Brotherhood etc. v. Vogt, Inc., 354 U.S. 284, 293, 77 S.Ct. 1166, 1 L.Ed.2d 1347, for instance, the opinion indicates no attempt to claim that the operation of the gravel pit was a business affecting interstate commerce. In Pappas v. Stacey, 151 Me. 36, 116 A.2d 497, a restaurant in Portland was picketed for the sole purpose of compelling the employer to put pressure on his employees to join the union in violation of the declared policy of Maine. The restaurant had an average of twenty-five regular employees and five other sporadic employees. It is hardly conceivable that such a large restaurant, in Portland, Maine, could have had less indirect interstate imports than the plaintiff’s little restaurant in Bridgeport. Yet neither the Supreme Court of Maine nor the Supreme Court of the United States, in the extended discussion of this case in the Vogt opinion, supra, even suggested that the business of the Portland restaurant was or might be, of an interstate character such as to preclude state action. The court’s finding that the plaintiff’s restaurant business in Bridgeport did not affect interstate commerce within the controlling definition in the federal act was not only fully supported by the evidence but was the only conclusion which could have been reasonably reached under the facts of this case.”
In the case of San Diego Building Trades Council et al. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, Mr. Justice Frankfurter, in the majority opinion, states:
“To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, [National Labor Relations Act] then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jursidiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601. In that case we held that the failure of the National Labor Relations Board to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating. It follows that the failure of the Board to define the legal significance under the Act of a particular ac *35 tivity does not give the States the power to act. In the absence of the Board’s clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. *
But irrespective of the rationale of the case just quoted, it must be remembered that the question of interstate commerce was present, while in the present case it is not.
We have come to the conclusion that picketing vel non is not controlled by Hotel Employees Union Local No. 255 v. Sax Enterprises, Inc., 358 U.S. 270, 79 S.Ct. 273, 3 L.Ed.2d 289, supra, and that the lower court had jurisdiction, by the showing that the plaintiff was not engaged in interstate commerce, to grant the temporary injunction and was not in error in so doing. It appears from the facts in this case that it is removed from the pre-emption of the Federal Government.
In their second point defendants raise the question of whether the temporary injunction is violative of their rights as being indefinite, uncertain and broader than necessary. From a reading of the various things which are enjoined, it is obvious that, taken literally, the restraining order is too broad. Mr. Justice Sebring, speaking for the court in Moore v. City Dry Cleaners & Laundry, Fla.1949, 41 So.2d 865, 871, discussed the particularity of an injunctive decree:
“The rule obtains that in an injunction proceeding the acts or things enjoined should be specified in the decree with such reasonable definiteness and certainty, considering their nature and character, that a defendant bound by the decree may readily know what he must refrain from doing without the matter being left to speculation and conjecture. Palm Corporation v. Walters, 148 Fla. 527, 4 So.2d 696; Henderson v. Coleman, 150 Fla. 185, 7 So.2d 117. The rule is, also, that an injunction order should never be broader than is necessary to secure to the injured party the full relief warranted by the particular facts of the case without injustice to his adversary. Seaboard Rendering Co. v. Conlon, 152 Fla. 723, 12 So.2d 882. * *
In clause 1(a) of the temporary restraining order the defendants are prohibited “from persuading or inducing the employees of Creighton’s Restaurant to strike or walk out, or otherwise quit in concert their work at Creighton’s Restaurant.” We hold that this language is too broad and can be the subject of various interpretations, and hence the clause should be stricken from the temporary restraining order.
Another clause, 1(c), bars the defendants from entering upon any portion of the described premises. This clause, also taken literally, would prevent, as counsel for the defendants states in his brief and in his oral argument before this court, his entering the premises for the sole purpose of having a meal or for any other legitimate purpose. We feel certain that the chancellor did not have such a result in mind at the time he signed the decree. But, nevertheless, the clause is there, and the defendants have appealed concerning it. We feel that all of clause 1(c) should be deleted.
With clauses (a) and (c) deleted from the decree, the balance of the restraining order does not partake of the vices which the defendants urge.
Affirmed in part and reversed in part.
KANNER, Acting Chief Judge, and STEPHENSON, GUNTER, Associate Judge, concur.