Surco Products, Inc. *v.* Kieszek, Appellant.

Argued April 12, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*John A. Metz, Jr.,* with him *Metz & Metz* and *Howard S. Auld,* for appellants.

*James H. Brennan,* with him *Maurice Chaitkin* and *Brennan & Brennan,* for appellee.

OPINION BY MR. JUSTICE BELL, May 23, 1951:

A Bill in Equity was filed on February 9, 1951, alleging a conspiracy and notifying defendants that an application for a temporary injunction would be presented to the court on February 15, 1951. The hear-

ing was continued until *February 16th* and on that date the court, after hearing some testimony, granted a preliminary injunction restraining the defendants from doing any business *until February 21,* 1951, at which time another hearing was to be held to determine a further order of the court. *The preliminary injunction was ordered without requiring any bond or other security* to indemnify defendants for damages which might be sustained by reason of such injunction. Defendants appealed from this order on February 21, 1951.

Plaintiff's Bill alleged that *prior to November 1, 1950* defendants, Kieszek and Simons, were shareholders of Surco Products, Inc., and defendant, Schneider, was general manager of Associated Manufacturing Corporation, which had made dies for plaintiff, which were used for its chemical device or diffuser, known as "Air-Scent". *On November 1, 1950* Kieszek and Simons sold their stock in Surco Products, Inc. to the plaintiff *in exchange for one-third of all of plaintiff's assets* (including a one-third interest in the dies which were to remain in the possession of Associated Manufacturing Corporation until otherwise authorized), and also a license to manufacture and sell the identical diffuser or device made by plaintiff under the same trade name of "Air-Scent" within one-third of the territory of the plaintiff's distributors, and in any open territory not covered by any distributor contract of plaintiff: The Bill then alleged a conspiracy of all the defendants to unlawfully compete with plaintiff, and to cheat and defraud plaintiff; and prayed for injunctive relief, an accounting, and punitive damages. *No injunction affidavits were attached to plaintiff's Bill or filed in court;* plaintiff elected instead to request a preliminary injunction after hearing by the Court.

This brief summary of the plaintiff's Bill of Complaint will suffice, since the contents of the Bill and the factual merits of the case are of little or no moment on this appeal.

Most of the record in the hearing or trial on *February 16,* 1951 consisted of a colloquy between the counsel for plaintiff and for defendants and the court, although some evidence was produced by plaintiff, which we shall briefly summarize. Defendant Schneider was President and Manager of Associated Manufacturing Corporation, one of the defendants, and Secretary-Treasurer of Associated Products, Inc., another defendant. *Schneider failed to bring with him under subpoena the minute book and charter of Associated Products, Inc.* The two corporate defendants had on hand approximately 800 units of the mechanical devices involved. Dies owned two-thirds by the plaintiff and one-third by the defendants Kieszek and Simons under the written contract attached to the Bill of Complaint were used by Associated Manufacturing Corporation to manufacture the inside bracket on the cap and the bracket on the body of the device sold by defendant, Associated Products, Inc.

On the Friday preceding the hearing the 800 units then on hand at the plant of defendant, Associated Manufacturing Corporation, were packed 24 in a box in boxes bearing the plaintiff's name on the outside, but these were merely production boxes and not shipping boxes. Counsel for defendants stated to the Court that the boxes had been received by defendants in the division of plaintiff's assets as clearly provided for in the above mentioned contract of November 1, 1950.

The important feature of the case is that defendant, Schneider, failed to bring in under a subpoena *duces tecum* the minute book and charter of Associated Products, Inc. for the reason, as he alleged, that he had

misinterpreted the subpoena. His counsel thereupon several times offered to produce the books and have them in court within one hour to an hour and fifteen minutes, but the court was enraged at Schneider's failure to produce the books and refused to consider counsel's offer. The court's attitude and viewpoint appears clearly from the following excerpts in the record: *"Mr. Auld*: If the Court please, the subpoena which was served on Associated Products, Inc. was a little indefinite inasmuch as it read, 'For all records as of July 1, 1950.' We were a bit confused because Associated Products, Inc. was not in existence on July 1, 1950 and therefore we haven't got the complete records as far as Associated Products is concerned. We have the record insofar as the dealings of Associated Manufacturing Corporation with Surco Products. We have those here. . . . Q. Why haven't you produced it? A. Because Associated Products, Inc. was not in existence July 1, 1950. Q. Does it say that in the subpoena? A. Yes. *Mr. Brennan:* Your Honor, I ask that this man be held in contempt of Court. *The Court:* We will so hold him in contempt of Court. . . . *Mr. Auld*: We have the records and are very willing to produce them and *this will virtually put the defendants out of business* . . . *It is not equitable. The Court:* I think you have lost your right to equity at this time. I have read the order. . . . *Just go out of business until Wednesday. Mr. Brennan:* Make no shipments, deliveries or manufacture. *Mr. Auld: You mean completely out of business,* cannot operate in their own territories that are not bound in this agreement? *The Court: Cannot do anything at all for two days. Mr. Auld:* Under this particular agreement they had the right and privilege to sell Air-Scent to distributors. Is there any reason we be prohibited from sending or

---

* Italics throughout, ours.

supplying our distributors of even Air-Scent? We would like an opportunity of proving wherein the plaintiff has violated this agreement. *The Court:* All right. *If you would have come in with clean hands today we would not have had this situation.* You brought the situation. You brought the situation on yourself."

The court, instead of admonishing Schneider or at the most holding him in contempt of court, *issued a preliminary injunction against all five defendants on February 16th without requiring bond or security* and fixed a hearing on February 21st to determine a further order of court.

The preliminary injunction issued by the court restrained defendants from selling or marketing the chemical diffuser manufactured from the dies of which plaintiff owned a two-third's interest; from using any advertising matter or plates to advertise the name "Sani-Air" or any similar name; from influencing or interfering with any of the named distributors of plaintiff; *and from manufacturing or delivering any units to any person until further order of the court.* On February 21st, prior to the time fixed for further hearing by the court below, defendants, as we have seen, took this appeal.

*The law is well settled that no preliminary injunction shall be issued by any court or judge until the party applying for the same shall have given bond with sufficient sureties or with other security to be approved by the court, conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction: Baur v. Wilkes-Barre Light Co.,* 259 Pa. 117, 102 A. 430; *Juniata Water & Water Power Co. v. Wilson Electric Co.,* 226 Pa. 407, 75 A. 603; *Kincaid's Appeal,* 66 Pa. 411; *Mintzer v. Turnbach,* 113 Pa. Superior Ct. 113, 172 A. 162.

The action of the court below in granting a temporary injunction without bond or other security was

an arbitrary and unjustifiable action, and in direct violation of many decisions of the appellate courts. It is interesting to note that no decision is cited by the court below or by the appellee in support of the court's action. The language of the Court in *Baur v. Wilkes-Barre Light Co.*, 259 Pa. 117, 121, 122, is particularly appropriate: "We think the learned court below committed manifest error in granting the injunction. *No bond or injunction affidavits were filed, and, hence, the court was without jurisdiction to award the writ.* Such action by the court was in direct violation of the Act of May 6, 1844, P. L. 564, Section 1 of which provides: 'No injunctions shall be issued by any court or judge, until the party applying for the same shall have given bond with sufficient sureties, to be approved by said court or judge, conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction.' *In no case, therefore, can an injunction issue without security being given,* as the Act of March 21, 1806, Sec. 13, 4 Sm. L. 326, provides that, 'in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this Commonwealth, the directions of the said acts shall be strictly pursued.' *The order awarding the injunction was also violative of equity Rule 82\** which provides: 'Cautionary orders in injunction bills shall not be made, nor shall any injunction be allowed except security be given according to law'; and of Rule 81 providing that preliminary injunctions may be granted, in accordance with the present practice, on bill and injunction affidavits. As we have frequently held, the equity

---

\* Rule 82 has been supplanted by present Rule No. 39, which provides: "Cautionary orders in injunction bills shall not be made nor shall any notice be allowed *without security being according to law.*"

rules, promulgated by this court in pursuance of the Act of June 16, 1836, P. L. 784, have the force of statutory enactments and must be strictly complied with. It, therefore, needs no argument to show that the court below was without authority to issue the injunction under the circumstances, and that the decree awarding the writ is a nullity. The decisions of this court conclusively settle the question: Erie & North-East R. R. Co. v. Casey, 26 Pa. 287; Kincaid's App., 66 Pa. 411; Gilroy's App., 100 Pa. 5; Juniata Water & Water Power Co. v. Wilson Electric Co., 226 Pa. 407."

Similarly in *Mintzer v. Turnbach*, 113 Pa. Superior Ct. 113, 172 A. 162, the Court said (pages 117-118): *"The filing of a bond was an essential prerequisite to the issuance of an injunction:* Baur v. Wilkes-Barre L. Co., 259 Pa. 117, 121, 102 A. 430. The granting of an injunction was, therefore, in direct violation of the equity rules: Juniata Water Co. v. Wilson Electric Co., 226 Pa. 407, 75 A. 603. Equity rules have the force of a statute, and a bill not in compliance therewith and all proceedings consequent thereupon are void: Cassidy v. Knapp, 167 Pa. 305, 307, 31 A. 638; Summerhill Boro v. Sherbine, 88 Pa. Superior Ct. 419, 423. Under the Act of May 6, 1844, P. L. 564 (12 PS §2071), 'no injunction shall be issued by any court or judge until the party applying for the same shall have given bond with sufficient sureties, to be approved by said court or judge,' etc. *The court, therefore, was clearly without jurisdiction to grant an injunction."*

It appears from appellee's paper book that after an appeal was taken to this Court, appellee, at some unstated time, furnished a bond in the sum of $5,000, which was approved by the court below. The lower court was utterly without power to enter the injunction and its error cannot be corrected or cured after an appeal has been made to this Court: *Juniata Water &*

*Water Power Co. v. Wilson Electric Co.,* 226 Pa. 407, 75 A. 603.

Judgment reversed at cost of appellee.