## East Norriton Water Company v. Inter-Township Water Company et al.

*Leon H. Fox* and *Leonard F. Markell, Jr.*, for plaintiff.

*Smillie, Bean & Scirica*, for defendant Inter-Township Water Company.

*S. Thomas Bulfamonte*, for defendant Mack and Martino.

CORSON, J., October 27, 1954.—Plaintiff seeks to have this court enjoin defendant Inter-Township Water Company from serving any water to consumers in plaintiff's chartered territory other than to those to whom said defendant is now serving water. At the same time, plaintiffs requests that the other defendants be enjoined from receiving the water which first defendant might offer to serve in plaintiff's territory. Plaintiff seeks this relief to maintain the status quo

pending the disposition of two appeals from decisions of the Public Utility Commission which it has taken to the Superior Court.

## Questions Involved

1. Does equity have jurisdiction to maintain the status quo where the Public Utility Commission has taken jurisdiction and an appeal has been filed with the Superior Court from the Public Utility Commission order?

2. Assuming that equity has jurisdiction, must plaintiff post a bond or provide other security to obtain a preliminary injunction under the present Equity Rules?

3. Again assuming that equity has jurisdiction, may it grant an injunction where no threat of irreparable harm is shown and where it appears that for any harm suffered from the acts sought to be enjoined plaintiff has an available remedy at law?

## Findings of Fact

1. Plaintiff has been incorporated and chartered to serve water in East Norriton Township since 1927 in an area approximately one and one-half square miles.

2. Defendant Inter-Township Water Company was incorporated in 1938 and granted a certificate of public convenience by the Public Utility Commission (hereafter PUC) to supply water to the public in East Norriton Township exclusive of the chartered territory of plaintiff.

3. In the past 14 years defendant has invaded plaintiff's exclusive territory and has and is supplying water to homes, fire hydrants and other consumers within the limits of plaintiff's exclusive franchise.

4. Plaintiff made no protests as to those prior invasions and did not file a complaint with the PUC until these proceedings were instituted in 1952.

5. Plaintiff serves 85 to 100 homes and at present has limited facilities and water supply, though it is

possible that an unlimited water supply could be obtained from Norristown Water Company.

6. The above-mentioned defendant serves over 500 customers and approximately 37 fire hydrants, receiving its water supply in unlimited quantity from the Norristown Water Company.

7. Defendants Charles G. Erny and James A. Nolen are building contractors and real estate developers with offices at 6315 Germantown Avenue, Philadelphia.

8. Defendant Margaret K. Hoban holds a legal title to a tract of land (approximately 33 acres) in East Norriton Township on which defendants Erny & Nolen are erecting a housing development.

9. This tract of land or part of it is within the chartered territory of plaintiff.

10. Defendant Edwin R. Mack owns a second tract of land (approximately eight acres) located in East Norriton Township.

11. Defendant Charles F. Martino, a licensed real estate broker doing business at 530 DeKalb Street, Norristown, Pa., is working with or as agent for defendant Mack in erecting another residential development on Mack's tract.

12. From the testimony taken it does not appear that the second mentioned tract of defendant Mack is within plaintiff's chartered territory.

13. Plaintiff seeks to prevent defendant Inter-Township Water Company from beginning to serve water to anyone who is within plaintiff's chartered territory to whom defendant is not already serving water and plaintiff seeks to enjoin the other defendants (named in paragraphs 7, 8, 10 and 11) from receiving any such water pursuant to any agreement existing among the defendants.

14. Plaintiff agrees that defendants may finish laying the pipes and completing the work begun.

15. Plaintiff agrees that defendant may not be en-

joined from continuing to serve water to those in plaintiff's territory who are now receiving it.

16. Plaintiff, in short, would not object to defendant's doing anything up to the point where they are ready to put water in the mains and begin to serve the new developments.

17. Defendant contractors and developers have a number of homes completed and sold and a number ready for sale.

18. Plaintiff is in no position to serve water to these homes at present.

19. After extensive hearings before the PUC an order was handed down which compared the facilities and services rendered by plaintiff and defendant and concluded that with respect to the unused rights of East Norriton in its territory, the PUC would, under the circumstances here, "view with approval an application on the part of Inter-Township for right and power to serve in East Norriton Township excluding the territory now served by East Norriton".

20. The commission has held in abeyance any final order to allow Inter-Township to take steps to amend its corporate charter to allow it to serve in the areas in dispute.

## Discussion

This is an unusual type of proceeding in that a preliminary order has already been handed down by the PUC in this matter and an appeal taken by plaintiff from the order to the Superior Court under the provisions of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101 et seq.

The immediate question presented is one of jurisdiction. The PUC has taken jurisdiction and considered every aspect of this case in detail. Both parties have been heard and none of the machinery established by the Public Utility Law has been denied to plaintiff. Yet, plaintiff asks equity to take jurisdiction, to inter-

cede on its behalf to maintain the status quo until final hearing and disposition of its appeals before the Superior Court.

Can equity so intercede in the face of a multitude of cases which expound and restate the general principle that equity is not available where a remedy for a particular wrong has been provided by statute? This principle is codified in the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, sec. 13, 46 PS §156, as interpreted by the Supreme Court on numerous occasions. See Oteri Appeal, 372 Pa. 557 (1953), which case was cited by this court to support the same principle in Collegeville Boro. v. Philadelphia Suburban Water Co., 70 Montg. 69 (1954), affirmed by the Supreme Court in 377 Pa. 636 (1954).

Plaintiff relies on Penn Public Motors, etc., v. Purple Stages, Inc., 4 Somerset 304 (1929), to support his plea for the relief sought. In that case plaintiff sought, and the Erie County court granted, a preliminary injunction to maintain the status quo until the Public Service Commission had acted.

The decree enjoined defendant from transporting persons for hire between intrastate points where the origin or destination would be between places on the scheduled route of plaintiff. From the relief sought and given it can be assumed that plaintiff was chartered and authorized to carry passengers for hire between certain points in the State and that defendant was encroaching on plaintiff's territory. Though the facts do not make it clear, in order to view plaintiff's complaint herein, in the most favorable light, it can also be inferred that the Public Utility (Service) Commission had taken jurisdiction and held hearings on the matter. Thus, it would seem that the relief granted in Penn Public Motors, supra, is so analogous to the relief sought here that this court could grant an injunction on the authority of that case.

However, even granting that Penn Public Motors, *supra*, was correctly decided, it does not control us here for two reasons.

In the first place, that case involved an invasion by defendant transportation company into territory where plaintiff already was providing service with scheduled runs. In the matter before us, plaintiff is not serving water in the territory in dispute and is not equipped to do so. Even if it could be assumed that there is as great a necessity to provide the public with bus transportation as there is to provide it with water, still, in the bus case defendant was enjoined from offering *further service where service was already provided.* Here we have homes with no water, some of which have been sold. Plaintiff, by its admission, is not now ready to serve defendants. The necessity that water be supplied to homes and fire hydrants immediately would, of itself, be sufficient to distinguish the two cases.

There is another factor however which, in view of language employed by the Supreme Court, negatives the value of the Penn Public Motors case as a controlling precedent. East Norriton Water Company has had its hearing before the PUC and a preliminary order has been handed down. In addition to the commission action, plaintiff, in compliance with the established machinery of the act, has taken an appeal to the Superior Court. In the bus case no order had been handed down by the Public Service Commission and thus no appeal was pending before the Superior Court. On this subject the Supreme Court said:

"Whether or not the preliminary injunction should ever have been granted or continued is not now before us; but, it is clear, whatever jurisdiction a court of equity *may* have had to maintain the status quo pending a decision by the commission, it *ended when the case reached the courts on appeal,* for then the matter

is regulated by the Appeals Act of May 19, 1897, P. L. 67, and by Article VI, Section 19, of the Public Service Company Law of July 26, 1913, P. L. 1374": Slate Belt Electric St. Ry. v. Pennsylvania Utilities Co., 267 Pa. 61, 64 (1920). (Notice that the cited section of the 1913 Act has been retained without material change in the 1937 Act—see 66 PS §1433.) (Italics supplied.)

In the case cited, the lower court had granted a preliminary injunction in aid of the Public Service Commission so that plaintiff could file his complaint, contesting new rates, with the Public Service Commission. The lower court continued the injunction pending the decision by the commission and, after the decision, until an appeal could be taken and a supersedeas sought. When the Superior Court allowed a supersedeas, the lower court dissolved the preliminary injunction and plaintiff appealed from that order of the lower court. The Supreme Court sustained the dissolution of the injunction as quoted.

Plaintiff, here, sought no injunction while before the commission under 66 PS §1343, and plaintiff has sought no equitable relief from the Superior Court. His argument in court was to the effect that since defendant was not a party to the appeal (only the PUC) a supersedeas would not afford plaintiff the relief he seeks—to restrain defendant from further invasions in his territory. However, defendant has, it appears, intervened in the pending appeal. Even without such intervention, the Superior Court has express authority to grant a supersedeas under 66 PS §1433.

If the differentiating facts discussed above do not sufficiently distinguish the two cases, then the quoted language of the Supreme Court in Slate Belt, supra, casts considerable doubt on its value as a controlling precedent. Furthermore, the cases which are cited in Penn Public Motors, supra, to support the jurisdiction

of equity to grant an injunction under such circumstances do not go as far as the lower court said they did. The cases cited at page 309 involved situations where a complaint in equity was filed *prior* to any complaint being brought before the Public Service Commission. The courts, in upholding a preliminary injunction, stated that such was only in aid of the commission in the sound discretion of the court *until the commission has had an opportunity to take jurisdiction and hear the matter*. Thus, where plaintiff goes into equity first, equity, though recognizing that jurisdiction lies with the Public Utility Commission, may grant a preliminary injunction to maintain the status quo so that plaintiff may properly prepare and present his complaint before the commission.

By way of illustration, in Fogelsville & Trexlertown Electric Co. v. Pa. Power & Light Co., 271 Pa. 237 (1921), defendant had failed to erect lines, provide power or otherwise serve an area in its franchised territory. Therefore, plaintiffs organized, obtained a certificate of public convenience and necessity and prepared to serve the neglected territory. Defendants, spurred into activity by plaintiff's actions, quickly erected poles, hooked up lines and otherwise prepared and began to serve in the area in question. Plaintiff sought an injunction to prevent any further work in their certificated territory and to compel defendants to stop serving and remove their instrumentalities. Such an injunction was granted. The Supreme Court modified the order on appeal so as to maintain the status quo for 30 days to give plaintiff time to complain to the commission and there obtain relief to preserve the status quo pending final determination. It noted that the commission had power under the act to bring companies under summary control.

In Pittsburgh Railways Co. v. Pittsburgh, 260 Pa. 424, 428 (1918), the court concluded:

"Whereas, here, and in other like cases, limited relief by way of injunction, to maintain the status quo pending an application to the commission, can be granted without in any way encroaching upon the jurisdiction of the latter tribunal."

The Fogelsville case, supra, is particularly pertinent to the case before us. First, because the Supreme Court thoroughly discussed and analyzed the jurisdictional relationship of court and commission under the act and, second, because it involved invasion by one utility of territory for which another had received a certificate from the commission. Speaking of the policy, purposes and powers set forth by the legislature in the Public Utility Law, the Supreme Court said:

"There has been placed under the regulation, supervision and control of the commission, generally, all matters relating to rights, facilities, service and other correlated matters of a public service company. By this act *a complete system in itself is presented* to enforce such powers: York Water Co. v. York, 250 Pa. 115, 118. Courts were not intended to be the administrative tribunal for this purpose. . . . Plaintiff *had a full and complete remedy to prevent any encroachment or wrongful use of territory* by defendant. . . . The powers of control or regulation, or whatever authority the court may, in other days, have possessed over these concerns, are supplanted by the Public Service Commission . . . (citing numerous cases": Fogelsville, supra, 240, 241. (Italics supplied.)

The Supreme Court goes on to note that all jurisdiction is not taken from the courts and that the acts of the commission are subject to review. This, however, is under the machinery and procedure provided by the act.

In the case before us, there is nothing to indicate whether plaintiff sought an injunction through the commission under 66 PS §1343, even though this is a proper

case for such an injunction to issue, for the regulations and orders of the commission are being violated and are about to be violated further. As quoted above, the Supreme Court states that a "full and complete remedy to prevent any encroachment" is presented by the act: Oteri, supra, and Collegeville Boro, supra, preclude equity from taking jurisdiction under such a situation.

Assuming that the statute did not provide complete machinery for protection of an individual's rights and that equity could enjoin in a proper case, nevertheless, plaintiff has appealed to the Superior Court, which is given exclusive jurisdiction over any appeals from the commission: 66 PS §1431. Since the Superior Court has jurisdiction by statute over the matter and since it possesses full equitable powers, the principle of comity would also suggest that this court has no jurisdiction: Trees et al. v. Glenn, 319 Pa. 487 (1935), upholds the principle that the court first obtaining jurisdiction may enjoin the second court from considering the matter: Lorenz, admr., et al. v. Wightman et al., 44 Pa. 27 (1862), stands for the proposition that where a matter is before a court which possesses full equitable powers, another court (the Supreme Court) will not take equitable jurisdiction and grant an injunction as to any aspect of the case.

But even if this court of equity did have jurisdiction in this matter, the issuance of an injunction rests in the sound discretion of the court and is not a matter of right: Berkey v. Berwind-White Coal Mining Co., 220 Pa. 65 (1908), and Rick et al. v. Cramp et ux., 357 Pa. 83, 90, 91 (1947). The chancellor will consider whether more harm would be done by issuing an injunction or by refusing to issue it and leaving plaintiff to his remedy at law: Richard's Appeal, 57 Pa. 105, 113 (1868).

Since, in this case, plaintiff has not shown wherein the irreparable harm to him would arise, since many

people will be prevented from, or seriously delayed in, moving into their new homes unless defendant serves them water, and since plaintiff can adequately obtain relief at law for any damages suffered, sound discretion dictates that no injunction be issued here. Though there is language in Pa. Public Utility Commission v. Israel et al., 356 Pa. 400, 406 (1947), which is cited for the proposition that irreparable harm need not be shown, yet that case was one where the PUC sought an injunction in Dauphin County court under 66 PS §1343 and the court specifically noted that to continue the unlawful conduct would constitute irreparable injury and was injurious to the public. Also, the case does not in any way deny the court's discretion in granting or refusing an injunction.

By preliminary objections defendant has also raised the problem as to whether or not plaintiff must post a bond or other security in order to obtain a preliminary injunction. The equity rules, effective July 1, 1952, would require that security be posted before any preliminary or special injunction could be granted. See rule 1531(b), 12 PS Appendix. After making an exception for the Commonwealth and its agencies when they are plaintiffs, the subsection provides:

". . . a preliminary or special injunction shall be granted only if (1) the plaintiff filed a bond . . ., or (2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court . . .".

In Surco Products, Inc., v. Kieszek, 367 Pa. 516 (1951), the Supreme Court dealt with the Act of May 6, 1844, P. L. 564, sec. 1, and Equity Rules 38 and 39, which have all been suspended by the 1952 rules (see section 1550):

"The law is well settled that no preliminary injunction shall be issued by any court or judge until the party applying for the same shall have given bond

with sufficient sureties or with other security to be approved by the court, conditioned to indemnify the other party for all damages that may be sustained . . .": Surco Products, Inc., supra, p. 520.

Rule 1531(*b*) does not change these requirements, and by rephrasing and combining the old rules in 1531 any doubt that security must be posted before a preliminary or special injunction can be issued *under any circumstances* has been removed. Former rules 38, 39 and 40 are now combined, modified and included in 1531. Under these rules, some of the old cases indicate that a preliminary injunction could be issued without security on a bill and injunction affidavits with notice to defendant. Such an interpretation is conceivable under the old rules for rule 38 seems to so state. Then rule 39 provides that "cautionary" orders shall not be made nor an injunction allowed without security. Rule 40 deals with special injunctions. All these subjects are dealt with in rule 1531. Rule 1531(*a*) contains the provisions as to hearings, notice, pleadings or petition and affidavits. It specifically deals with preliminary or special injunctions. Rule 1531(*b*), quoted above in part, also specifically deals with both preliminary and special injunctions. Under this rule an injunction shall not be issued unless security is posted, and the pleadings or petition and affidavits are only to be the basis of the court's determining whether plaintiff has grounds for an injunction. Therefore, to obtain a preliminary injunction, it would be necessary for plaintiff to file a bond or post other security.

### Conclusions of Law

1. Where the Public Utility Commission has taken jurisdiction over a matter, clearly a subject of its statutory control, and has handed down an order from which an appeal has been taken to the Superior Court. this court has no jurisdiction or power to grant an injunction with regard to that matter.

2. Even if this court did have power to grant an injunction, plaintiff has not established grounds for

invoking the aid of equity in that he has a remedy at law which he has not exhausted, in that his damages at law appear to be adequate, and in that more harm would be done to the public by granting the injunction than plaintiff might suffer from its denial.

3. Again assuming jurisdiction, equity rule 1531 requires that a bond be posted before a preliminary injunction can be issued.

And now, October 27, 1954, it is ordered, adjudged and decreed that the rule for preliminary injunction be, and is, discharged and injunction refused.