## City Line Open Hearth, Inc. *v.* Hotel, Motel & Club Employees' Union, Appellant.

Argued April 19, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused March 2, 1964.

*Alan R. Howe*, with him *Edward Davis*, for appellants.

*Arthur S. Keyser*, with him *Kleinbard, Bell & Brecker*, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 21, 1964:

This is an appeal by the defendant Union and its President from a Decree of the Court below which granted a preliminary injunction restraining the appel-

lants from picketing the premises of the plaintiff-appellee.

## Facts

On November 19, 1962, City Line Open Hearth, Inc., hereinafter referred to as City Line, opened a restaurant and cocktail lounge at 4444 City Line Avenue, Philadelphia. On January 16, 1963, City Line filed a Complaint in Equity asking for an injunction against the defendants-appellants, because of their coercive activities and their conduct which was characterized by threats and violence.

The coercion which City Line charged and proved constituted, inter alia, a violation of Section 6(2) of the Pennsylvania Labor Relations Act of June 1, 1937.* However, the lower Court overlooked the legally important fact that it would also have violated the Labor Management Relations Act of 1947,** as amended. Section 8(b)(7) of that Act pertinently provides: "(b) It shall be an unfair labor practice for a labor organization or its agents . . . (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where *an*\*** object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, . . . ."

Following a hearing of the Complaint and a consideration of the evidence presented, Judge MILNER entered a preliminary injunction. Defendants immediately appealed on the ground that since the activities complained of by appellee were "arguably" proscribed

---

\* P. L. 1168, 43 P.S. §211.1 et seq.
\*\* C. 120, 61 Stat. 136, 29 U.S.C.A. 141 et seq., as amended.
\*\*\* Italics throughout, ours.

as unfair labor practices under Section 8(b) of the National Labor Management Relations Act of 1947, the National Labor Relations Board had *exclusive* jurisdiction in the matter.

## Basis of Lower Court's Injunction

While finding that the picketing conducted by the defendants was characterized by what amounted to intimidating conduct, vandalism and violence, the lower Court granted a preliminary injunction on the grounds (1) that there had been no showing of federal jurisdiction** and (2) that the defendants were endeavoring

---

** A few days prior to the official opening of City Line, pickets representing the Union appeared with signs stating that City Line was a non-union establishment. City Line offered to hold a secret election to determine if the employees at the restaurant wished to join the Union. The Union refused this offer.

On November 29, 1962, City Line filed with the National Labor Relations Board a charge against the appellant Union, that it was picketing to *require* City Line to bargain collectively with the Union even though the Union was not certified by the Board as the exclusive bargaining agent. On December 11, 1962, the Board refused to issue a complaint, giving no reason for its refusal.

On December 19, 1962, City Line filed with the Board a petition for certification, asserting that the (defendant) Union claimed that it represented City Line's employees. On January 17, 1963, this petition was dismissed by the Board, because the Union filed a disclaimer of interest in the affected employees. In view of the fact that the N.L.R.B. had twice refused to take jurisdiction, we can understand why the hearing Judge concluded that the picketing conducted by defendants was not arguably within the exclusive jurisdiction of the National Labor Relations Board. The N.L.R.B., *after* the injunction had been granted in the instant case, filed an Advisory Opinion taking jurisdiction. The trial Judge correctly ruled that it was not a part of the record and consequently could not be considered: *Wolf v. Commonwealth*, 403 Pa. 499, 170 A. 2d 557; *Surco Products, Inc. v. Kieszek*, 367 Pa. 516, 80 A. 2d 842; *Roth v. Columbia Distributing Company of Allentown*, 371 Pa. 297, 89 A. 2d 825; *Heller v. Capital Bank and Trust Company*, 330 Pa.

to *coerce the appellee* to commit a violation of Section 6 of the Pennsylvania Labor Relations Act, supra, by forcing its employees to join the defendant Union. The Union challenges the first ground, and denies the applicability of the second ground. We shall consider the grounds in their inverse order.

Because of the misunderstood state of the law in this field, we shall analyze and review many cases at length, in an attempt to eliminate much of the existing confusion.

### Jurisdiction and Power of State Courts Prior to the Taft-Hartley Act

Prior to the enactment of the National Labor Management Relations Act of 1947, frequently referred to as the Taft-Hartley Act, there was no doubt whatsoever as to the right of a State Court to restrain picketing which was in violation of State law, even if the picketing were peaceful: *International Brotherhood v. Vogt, Inc.*, 354 U.S. 284 (1957); *Building Service Union v. Gazzam*, 339 U.S. 532 (1950); *Hughes v. Superior Court of California*, 339 U.S. 460; *Bakery & Pastry Drivers v. Wohl*, 315 U.S. 769, 775. Cf. also: *Allen-Bradley Local v. Wisconsin E. R. Board*, 315 U.S. 740.*

---

174, 198 A. 298. However, the Supreme Court of the United States has specifically ruled that it makes no difference whether the National Labor Relations Board. has declined to exercise its jurisdiction, even though it thereby creates a "no man's land" and often leaves parties without redress.

&ast; Also: *Northampton Area Joint School Authority v. Building and Construction Trades Council of Allentown, Bethlehem & Easton*, 396 Pa. 565, 152 A. 2d 688; *Anchorage, Inc. v. Local 301 A.F.L.*, 383 Pa. 547, 119 A. 2d 199; *Sansom House Enterprises, Inc. v. Waiters & Waitresses Union*, 382 Pa. 476, 115 A. 2d 746; *Baderak v. Building and Construction Trades Council*, 380 Pa. 477, 112 A. 2d 170; *Wilbank v. Chester and Delaware Counties Bartenders, Hotel and Restaurant Employees Union*, 360 Pa. 48, 60 A. 2d 21;

*International Brotherhood of Teamsters v. Vogt, Inc.,* 354 U.S. (1957), supra, is well summarized in the syllabus: "Respondent owns and operates a gravel pit in Wisconsin, where it employs 15 to 20 men. Petitioner unions sought unsuccessfully to induce some of respondent's employees to join the unions and began picketing the entrance to respondent's gravel pit with signs reading, 'The men on this job are not 100% affiliated with the A.F.L.' As a result, drivers of several trucking companies refused to deliver and haul goods to and from respondent's plant, causing substantial damage to respondent. On respondent's application, a State Court enjoined the picketing. The injunction was sustained by the State Supreme Court *on findings by it* that (1) the picketing had been engaged in for the purpose of coercing respondent to force its employees to become members of petitioner unions, and (2) such picketing was for 'an unlawful purpose,' since Wis. Stat. §111.06(2)(b) made it an unfair labor practice for an employee individually or in concert with others to 'coerce, intimidate or induce an employer to interfere with any of his employes in the enjoyment of their legal rights . . . or to engage in any practice with regard to his employes which would constitute an unfair labor practice if undertaken by him on his own initiative.' Held: The judgment is affirmed.

"(a) *Prior decisions* of this Court have established a broad field in which *a State,* in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, *may constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy.*

"(b) Consistently with the Fourteenth Amendment, *a State may enjoin peaceful picketing the pur-*

---

*Phillips v. United Brotherhood of Carpenters and Joiners of America,* 362 Pa. 78, 66 A. 2d 227; *Wortex Mills v. Textile Workers Union,* 369 Pa. 359, 85 A. 2d 851 (and cases cited therein).

*pose of which is to coerce an employer* to put pressure on his employees to join a union in violation of the declared policy of the State. Pappas v. Stacey, 151 Me. 36, 116 A. 2d 497, appeal dismissed, 350 U.S. 870.

"270 Wis. 321a, 74 N.W. 2d 749, affirmed."

### Recent Decisions re Jurisdiction of N.L.R.B. and of State Courts

However, the more recent decisions of the Supreme Court of the United States which are hereinafter cited and quoted lay down and apply different rules or tests, without distinguishing or expressly overruling the aforesaid decisions.

In order to vest the National Labor Relations Board with exclusive jurisdiction and divest State Courts of Equity jurisdiction which they have possessed for a very long period of time, it is necessary, in this class of case, for the parties who claim that the N.L.R.B. has exclusive jurisdiction to prove, inter alia, (1) that the employer was engaged in interstate commerce or that its activities substantially* affect interstate commerce and (2) that the challenged activities were expressly or *arguably* within the jurisdiction of the N.L.R.B.: *Local 100, United Association of Journeymen & Apprentices v. Borden,* 373 U.S. 690, 693 (June 3, 1963); *Marine Engineers Beneficial Association v. Interlake Steamship Co.,* 370 U.S. 173; *Construction and General Laborers' Union v. Curry,* 371 U.S.

---

\* Cf. *Pennsylvania L. R. B. v. Friedberg,* 395 Pa. 294, 148 A. 2d 909. See, also *Jay's Food Center, Inc.,* 142 N.L.R.B. No. 142 (and cases cited therein) which provides that the Board's current standard for exercising jurisdiction over retail enterprises which satisfy its statutory jurisdiction under the Landrum-Griffin Act (the Labor-Management Reporting and Disclosure Act of 1959) (Act of Congress of September 14, 1959, P. L. 86-257), Title VII, Section 701(a), 73 Stat. 541, 29 U.S.C.A. §164(c)(1) and (2), is a gross volume of business of at least $500,000 per annum.

542; *Ex parte George,* 371 U.S. 72; *Plumbers' Union v. Door County,* 359 U.S. 354, 359; *San Diego Council v. Garmon,* 359 U.S. 236, 244-245; *Hotel Employees Union v. Sax Enterprises, Inc.,* 358 U.S. 270; *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 478, 481; *Garner v. Teamsters Union,* 346 U.S. 485, 489-491.

Furthermore, the jurisdiction of the N.L.R.B. must be readily ascertainable from the averments of fact contained in the Complaint itself, or must be affirmatively proved by the party alleging such jurisdiction. *Northampton Area Joint School Auth. v. Building and Construction Trades Council,* 396 Pa. 565, 152 A. 2d 688; *Haefele v. Davis,* 373 Pa. 34, 95 A. 2d 195.

Judge MILNER specifically found that defendants had failed to prove that City Line* was engaged in interstate commerce or that it did an annual gross business of $500,000 or more, or that its activities were otherwise within the exclusive jurisdiction of the N.L.R.B.

### The General Rule

*The general rule,* with *certain exceptions* hereinafter discussed, is *now* well settled, viz., if a labor act or practice or activity is prohibited by or made a violation of state law, but is also *an unfair labor practice* over which the N.L.R.B. expressly or *arguably* has jurisdiction, the jurisdiction of the State Court is ousted and the jurisdiction of the N.L.R.B. is exclusive, even though the Board fails or refuses to take jurisdiction or to consider the challenged act or practice or activity. *Marine Engineers Beneficial Association v. Interlake Steamship Company,* 370 U.S. 173 (1962); *Ex parte*

---

* A restaurant which had leased a part of the ground floor of a motel and at the time of the hearing had been in business only two months and these two months included the Thanksgiving Day and the Christmas and New Year's holidays.

*George,* 371 U.S. 72 (1962); *Local No. 438, Construction and General Laborers' Union v. Curry,* 371 U.S. 542 (January 21, 1963); *San Diego Unions v. Garmon,* 359 U.S. 236; *Hotel Employees v. Sax Enterprises,* 358 U.S. 270 (1959); *Guss v. Utah Labor Relations Board,* 353 U.S. 1; *Amalgamated Meat Cutters v. Fairlawn Meats, Inc.,* 353 U.S. 20; *San Diego Building Trades Council v. Garmon,* 353 U.S. 26 (1957); *Weber v. Anheuser-Busch,* 348 U.S. 468; *Garner v. Teamsters Union,* 346 U.S. 485; *Smith v. Pittsburgh Gage & Supply Co.,* 412 Pa. 171, 194 A. 2d 181; *Smith's Transfer Corporation v. Voice of Teamsters,* 409 Pa. 217, 185 A. 2d 563; *Terrizzi Beverage Company v. Local Union No. 830,* 408 Pa. 380, 184 A. 2d 243; *Baker v. Shopmen's Local Union No. 755,* 403 Pa. 31, 168 A. 2d 340; *Pa. L. R. B. v. Napoli,* 395 Pa. 301, 150 A. 2d 546; *Pa. L. R. B. v. Friedberg,* 395 Pa., supra.

The general rule, as well as the basic reason for the rule and the field it covers, is thus expressed in *Marine Engineers Beneficial Association v. Interlake Steamship Co.,* 370 U.S., supra (1962) where the Court said (page 174): "In San Diego Building Trades Council v. Garmon, 359 U.S. 236, this Court held that the proper administration of the federal labor law requires state courts to relinquish jurisdiction not only over those controversies actually found to be within the jurisdiction of the National Labor Relations Board, but also over litigation arising from activities which might *arguably* be subject to that agency's cognizance. Only such a rule, the Court held, will preserve for the Labor Board its congressionally delegated function of deciding what is and what is not within its domain."

In *San Diego Unions v. Garmon,* 359 U.S., supra, the Court said (pages 244-246): "At times it has not been clear whether the particular activity regulated by the States was governed by §7 or §8 or was, perhaps, outside both these sections . . . .

". . . It is not for us to decide whether the National Labor Relations Board would have, or should have decided these questions in the same manner. When an activity is *arguably* subject to §7 or §8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by §7, or prohibited by §8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity *with unclouded legal significance.* . . . It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. In the absence of the Board's *clear determination* that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. . . . The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy."

This no man's land has been partially filled by the Landrum-Griffin Act of 1959, supra, and by the decisions of the N.L.R.B. hereinabove referred to.

## Exception to General Rule: Power of State Courts to Preserve Order

The Supreme Court of the United States, both before *and after* the Taft-Hartley Act, has repeatedly held that *State Courts have the power, the right and the duty to restrain violence, mass picketing and overt threats of violence,* and to preserve and protect public order and safety and to prevent property damage— even if, *absent such conduct,* the activities complained of would constitute unfair labor practices over which the National Labor Relations Board would have exclusive jurisdiction: *San Diego Building Trades Council v. Garmon,* 359 U.S. 236; *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131; *United Automobile etc. Workers of America v. Wisconsin Employment Relations Board,* 351 U.S., supra; *Weber v. Anheuser-Busch, Inc.,* 348 U.S., supra (1955); *Allen-Bradley Local v. Wisconsin Board,* 315 U.S., supra; *Thornhill v. Alabama,* 310 U.S. 88; *Smith v. Pittsburgh Gage & Supply Co.,* 412 Pa. 171, 194 A. 2d 181; *Smith's Transfer Corp. v. V. of Teamsters D. O. Com.,* 409 Pa. 217, 185 A. 2d 563; *Terrizzi Bev. Co. v. Local Union No. 830,* 408 Pa. 380, 184 A. 2d 243; *Wortex Mills v. Textile Workers U. of A.,* 369 Pa. 359, 85 A. 2d 851.

In *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* 369 Pa. 359, the Court said (pages 363-364): "In the light of the mass picketing, threats and intimidation, it seems strange that anyone should contend that a State Court is powerless to issue an injunction. It is well to recall that a State or other Sovereign has a paramount right and an inescapable *duty to maintain law and order, to protect life, liberty and property* and to enact laws and police regulations for the protection and preservation of the safety, health and welfare of the people of the state or community: *Carnegie-Illinois Steel Corp. v. U. S. W. of A.,* 353 Pa.

420, 426, 45 A. 2d 857; Westinghouse Electric Corp. v. United Electrical Workers, 353 Pa. 446, 460, 46 A. 2d 16.

" 'The power and duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted': Thornhill v. Alabama, 310 U.S. 88, 105; Carlson v. California, 310 U.S. 106, 113. The sovereign powers of a State should be protected and sustained except where restricted by the Federal or State Constitution and except where 'an "intention of Congress to exclude States from exerting their police power [is] clearly manifested." Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, and cases cited; Kelly v. Washington, 302 U.S. 1, 10; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177; H. P. Welch Co. v. New Hampshire, 306 U.S. 79, 85; Maurer v. Hamilton, 309 U.S. 598, 614; Watson v. Buck, supra': Allen-Bradley Local v. Wisconsin E. R. Board, 315 U.S. 740, 749.' "

The Supreme Court in *United Automobile Workers of America*, 351 U.S., supra (1956), pertinently said (page 274) : "There is no reason to re-examine the opinions in which this Court has dealt with problems involving federal-state jurisdiction over industrial controversies. They have been adequately summarized in Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 474-477 [1955]. *As a general matter* we have held that a State may not, in the furtherance of its public policy, enjoin conduct 'which has been made an "unfair labor practice" under the federal statutes.' Id., at 475, and cases cited. *But our post-Taft-Hartley opinions have made it clear .that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence.* The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. *Nor should the fact that a union commits a*

*federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence . . . .*

"*The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction.* We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect."

In *Youngdahl v. Rainfair, Inc.*, 355 U.S., supra (1957), the Court affirmed the grant of an injunction and said (pages 138-139) : ". . . Petitioners concede that the state court had the power to enjoin violence. Auto Workers v. Wisconsin Board, 351 U.S. 266; Allen-Bradley Local v. Wisconsin Board, 315 U.S. 740. Respondent contends that the record here shows a pattern of violence so enmeshed in the picketing that, to restore order, it was necessary to enjoin all organized conduct. Petitioners, on the other hand, urge that there was no violence here and no threat of it and, accordingly, that there was no factual warrant for the injunction which issued.

"The issue here is whether or not the conduct and language of the strikers were likely to. cause physical violence. Petitioners urge that all of this abusive language was protected and that they could not, therefore, be enjoined from using it. We cannot agree. Words can readily be so coupled with conduct as to provoke violence. See Chaplinsky v. New Hampshire, 315 U.S. 568, 571-572. Petitioners contend that the words used, principally 'scab' and variations thereon, are within a protected terminology. But if a sufficient number yell any word sufficiently loudly showing an intent to ridicule, insult or annoy, no matter how innocuous the dictionary definition of that word, *the effect may cease to be persuasion and become intimidation and incitement to violence* . . . . Recognizing that the trial court

was in a better position than we can be to assess the local situation, we think the evidence supports its conclusion, affirmed by the State Supreme Court, *that the conduct and massed name-calling by petitioners were calculated to provoke violence and were likely to do so unless promptly restrained."*

In *International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO) v. Russell,* 356 U.S. 635 (1958), where an employee who worked in an industry affecting interstate commerce brought an action against a union and its agent for damages in tort for interference with plaintiff's lawful occupation, by engaging in *mass picketing* which prevented him from going to work, the Court sustained a judgment for plaintiff and pertinently said (page 640) :* "At the outset, we note that the union's activity in this case clearly was not protected by federal law. Indeed the strike was conducted in such a manner that it could have been enjoined by Alabama courts. Youngdahl v. Rainfair, Inc., 355 U.S. 131; Auto Workers v. Wisconsin Board, 351 U.S. 266."

In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236 (1959) the Court refused an injunction but once again pertinently said (page 247) : "It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of *conduct marked by violence and imminent threats to the public order.* United Automobile Workers v. Russell, 356 U.S. 634; United Construction Workers v. Laburnum Corp., 347 U.S. 656. *We have also allowed the States to enjoin such conduct.* Youngdahl v. Rainfair, 355 U.S. 131; Auto Workers v. Wisconsin Board, 351 U.S. 266. *State jurisdiction has prevailed in these situations because the compelling*

---

* The union had asserted that Congress had preempted the field.

*state interest,* in the scheme of our federalism, *in the maintenance of domestic peace* is not overridden in the absence of clearly expressed congressional direction . . . ."

In *Local 100, United Association of Journeymen & Apprentices v. Borden,* 373 U.S. 690 (June 3, 1963) a union employee sued a local union and a parent union seeking damages under State law for their refusal to refer him to the Farwell Construction Company for a job with that company. The Court held that this was a matter exclusively for the National Labor Relations Board but again pertinently said (page 693) : "This Court held in San Diego Building Trades Council v. Garmon, 359 U.S. 236, that *in the absence of an overriding state interest such as that involved in the maintenance of domestic peace,* state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is *arguably* subject to the protections of §7 or the prohibitions of §8 of the National Labor Relations Act. . . ."

As recently as October, 1963, this Court said in *Smith v. Pittsburgh Gage & Supply Co.,* 412 Pa. 171, 194 A. 2d 181 (page 176) : "To the general rule defining jurisdiction, the U. S. Supreme Court has recognized exceptions* in the case of certain activities, even though such activities are arguably, or even concededly, within the protections of §7 or the prohibitions of §8

---

* See, for example, *International Union, United Automobile Workers of America v. Russell,* 356 U.S. 635, and *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, where a common law tort action for damages against a union was affirmed; *Algoma Plywood Co. v. Wisconsin Employment Relations Board,* 336 U.S. 301. Another exception was recently recognized in *Retail Clerks v. Schermerhorn,* 32 L.W. 4018 (December 2, 1963) where the Court decided that even under and after the Taft-Hartley Act, States have the power to ban an Agency Shop and likewise to enforce the ban.

of the Act. As examples the Garmon rule has been held inapplicable or irrelevant (a) where the activity consists of *'conduct marked by violence and imminent threats to the public order'* (United Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, 74 S. Ct. 833; United Automobile Workers v. Russell, 356 U.S. 634, 78 S. Ct. 932) ; . . . ."

Without deciding whether the grounds upon which the lower Court relied were or were not justified, we deem it wise to place our decision in this case upon a different and completely unchallengeable ground. Even though the lower Court did not place its decree granting a preliminary injunction on the necessity of restraining the coercive and intimidating conduct practiced by appellants, this would not affect our right and power to affirm the decree if the injunction could be justified on that or any other ground.

### Appellate Review re Preliminary Injunction

On an appeal from the grant or refusal of a preliminary injunction, the test in this Court is well settled. We consider and decide, not the merits of the case but only whether there were *any apparently reasonable or justifiable grounds* for the action of the Court below; and if such exists, the Decree (or Order) will be affirmed unless the record presents palpable legal error : *Philadelphia v. Philadelphia Transportation Co.,* 386 Pa. 231, 236, 126 A. 2d 132; see also *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 145, 189 A. 2d 271; *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899; *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.,* 410 Pa. 214, 189 A. 2d 180; *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A. 2d 626.

In *Hader v. Coplay Cement Mfg. Co.,* 410 Pa., supra, the Court said (pages 145-146) : "Upon appellate review we are not bound by the reason or reasons ad-

vanced by the Court below in support of a judgment or order for it is the judgment or order itself which is the subject of review. . . . 'The only error upon the record is a wrong reason for a right judgment; but, as we review not reasons but judgments, we find nothing here to correct.' The true rule on appellate review is that stated in Sherwood v. Elgart, 383 Pa. . . . 115, . . .: 'The rule here applicable is that a correct decision will be sustained if it can be sustained for any reason whatsoever; in other words we will not reverse in such a case even though the reason given by the Court below to sustain its decision was erroneous. [citing cases.]' "

Hence, even if the grounds or reasons given by the lower Court for the entry of a preliminary injunction in this case were wrong, the decree must be sustained because the injunction was properly issued to restrain conduct which included vandalism, threatened violence, and interference with public order and safety.

## Appellants' Conduct

In Judge MILNER'S opinion, he thus described the character of some of the appellants' activities, threats and vandalism: "On other occasions drivers delivering supplies came running into the office and said, 'My keys are gone from the truck.' This loss of keys also occurred with a repairman. Mr. Segal [City Line's President] described instances whereby the light switch in his automobile was turned on causing the battery to go dead. On another occasion his car seat was slit from back to front about 18 inches. He described other damage and vandalism to parked automobiles of employees that he observed . . . the Pennsylvania State Employment Service terminated dealing with plaintiff although it had been setting up a pilot program for training banquet employees . . . .

"One of the plaintiff's waitresses testified that one of the pickets called her a vulgar name; that one of them hollered, 'Hey, lady, why don't you join this union? We can get pretty rough.' She described actions by pickets on at least three occasions peering in the windows at people sitting nearby, making faces or sticking their tongues out. Patrons became annoyed and moved further back in the dining room."

Mr. Segal described how the plaintiff had been losing customers as the result of the unlawful tortious conduct of the defendants.

The above mentioned conduct was the conduct of the Union's pickets. Lawrence Stoltz testified that he was President of the Local and that the pickets were acting under his direction. James H. Small, an organizer for the Union, also testified that he helped run the picket line and instructed the pickets.*

To summarize: It is clear that the Court below was justified in issuing a preliminary injunction to restrain the picketing because (1) it was conducted in a way which included intimidation, coercion, blocking entrances and exits, vandalism, and threatened violence which jeopardized public order and safety, and (2) this was the conduct of appellants and their agents. However, the Court believes that the preliminary injunction was too broad and it is therefore modified to restrain defendants, their agents and other persons from blocking entrances and exits and from all acts of intimidation, vandalism, violence and threats of violence which affect or jeopardize public safety or public order.

Decree, as modified, affirmed at appellants' costs.

---

* Both witnesses of course denied that any pickets were responsible for the vandalism or for any of the other unjustifiable conduct described by City Line's witnesses. It strains our credulity to believe that this unlawful vandalism, threats and violence was committed by men from Mars or by unknown strangers, as the Union would have us believe.

DISSENTING OPINION BY MR. JUSTICE JONES:

I agree with the principles of law enunciated in the majority opinion. However, my examination of the record leads me to the conclusion that the proven conduct of which complaint is made is not of such character as to give a state court jurisdiction under *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S. Ct. 833 and *United Automobile Workers v. Russell,* 356 U.S. 634, 78 S. Ct. 932.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

There is such an abundance of excellent legal writing on the problem of state jurisdiction over labor relations that it seems a waste of time to require the reading of the lengthy majority opinion in order to discover that the decision equates the petty contacts disclosed by the evidence as "conduct marked by violence and imminent threats to public order."

At this late date it should come as no surprise to the Bar that Congress has preempted activities subject to the NLRA and that the Supreme Court of the United States, despite the presence of activities potentially subject to the NLRA, has permitted states to retain jurisdiction and power to regulate as a matter of their own state law (1) conduct of "merely peripheral concern" to the Federal Act, and (2) conduct "marked by violence and imminent threats to the public order", and (3) a suit under section 301 of the Taft-Hartley Act on a collective contract between a union and an employer,[1] and (4) the enforcement of an agency shop contract that violates a state law applicable to such contract by virtue of Section 14(b) of the NLRA.

I can not conclude as the majority does that the activities in this labor dispute generated sufficient "vio-

---

[1] In this situation only Federal law would be applied by the state court.

440

lence and imminent threats to the public order" so as to create state jurisdiction.

I dissent.

___

DISSENTING OPINION BY MR. JUSTICE EAGEN:

The able and scholarly majority opinion correctly states the law. That a clarification in this difficult field was urgently needed is clearly indicated by the numerous cases presented to this Court in recent months, which patently manifest existing confusion in the minds of the bench and bar on the jurisdictional question involved. A reading of the record of the present proceeding in the court below proves the point beyond argument.

However, after very careful consideration, I cannot join in the majority opinion because I believe the record does not support the facts recited therein. The testimony does not establish that the serious acts of violence complained of were committed by the defendants. Their guilt cannot be assumed because of suspicious circumstances. The only acts, which the evidence connects with the defendants, are of a very trivial nature. The right to an injunction must be clearly established. It should not issue on the basis of guess or conjecture. See, *Terrizzi Bev. Co. v. Local Union No. 830*, 408 Pa. 380, 184 A. 2d 243 (1962).